Joseph M. Coleman (SBN 04566100)
John J. Kane (SBN 24066794)
JaKayla J. DaBera (SBN 24129114)
**KANE RUSSELL COLEMAN LOGAN PC**
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4200
Fax: (214) 777-4299
Email: jcoleman@krcl.com
Email: jkane@krcl.com
Email: jdabera@krcl.com

Benjamin T. Kurtz (*pro hac vice* forthcoming)
Kent J. Hayden (*pro hac vice* forthcoming)
Evan Ribot (*pro hac vice* forthcoming)
**KIRKLAND & ELLIS LLP**
333 W Wolf Point Plaza
Chicago, Illinois 60654
Tel.: (312) 862-2000
Fax: (312) 862-2200
Email: benjamin.kurtz@kirkland.com
Email: kent.hayden@kirkland.com
Email: evan.ribot@kirkland.com

*Counsel for Blue Owl Real Estate Capital LLC*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SQRL SERVICE STATIONS, LLC, | ) | Case No. 24-32457-mvl |
| | ) | |
| Debtor. | ) | |
| | ) | |

**EMERGENCY MOTION OF BLUE OWL REAL ESTATE CAPITAL LLC
CONFIRMING ABSENCE OF THE AUTOMATIC STAY**

Blue Owl Real Estate Capital LLC ("Blue Owl"), on behalf of and in its capacity as

manager and owner of 51 landlord entities (the "Landlords," and, collectively with Blue Owl,

"Movants"),[1] by and through their undersigned counsel hereby submit this *Emergency Motion of*

---

[1] The Landlords include the following entities: Mountain Portfolio Owner ARGAMO LLC, Mountain Portfolio Owner OK 3 LLC, Mountain Portfolio Owner AROKMS LLC, Mountain MCTX001 LLC, Mountain IRTX001 LLC, Mountain DATX002 LLC, Mountain DATX004 LLC, Mountain DATX005 LLC, Mountain METX001 LLC, Mountain Portfolio OK LLC, Mountain Portfolio OK 2 LLC, Mountain DATX001 LLC, Mountain BSTX001 LLC, Mountain DATX003 LLC, Mountain BMTX001 LLC, Mountain FXTX001 LLC, Mountain FWTX002 LLC, Mountain FWTX003 LLC, Mountain NRTX001 LLC, Mountain Portfolio Owner WI MI LLC, Mountain Portfolio Owner AL LLC, Mountain Portfolio Owner LA 2 LLC, Mountain Portfolio Owner LA 3 LLC, Mountain Portfolio Owner LA 4 LLC, Mountain Portfolio Owner LA 5 LLC, Mountain Portfolio Owner MS LLC, Mountain Portfolio Owner AR LLC, Mountain Portfolio Owner LA LLC, Mountain Portfolio Owner LLC, Mountain Portfolio Owner ALARMS LLC, Mountain Portfolio Owner LA 8 LLC, Mountain Portfolio Owner LAKS LLC, Mountain Portfolio Owner MS 2 LLC, Mountain Portfolio Owner NLP OH LLC, Mountain Portfolio Owner OH LLC, Mountain Portfolio Owner PA 3 LLC, Mountain Portfolio Owner IA LLC, Mountain Portfolio Owner SCMNWI LLC, Mountain Portfolio Owner IN LLC, Mountain Portfolio Owner NY LLC, Mountain Portfolio Owner OK LLC, Mountain Portfolio Owner OK 2 LLC, SQMO Owner LLC, SQLUTX LP,

*Blue Owl Real Estate Capital LLC Confirming the Absence of the Automatic Stay* (the "Motion"), and in support of which state as follows:

## PRELIMINARY STATEMENT

Debtor SQRL Service Stations, LLC ("SQRL Stations" or "Debtor") is the former lessee of more than 200 properties owned by the Landlords under lease agreements that were rightfully terminated prior to the filing of the instant action and to which Movants lawfully seek to retain possession. SQRL Stations and its owner, Gas Hub Investments LLC ("Gas Hub"), know this, because the Court in *In re SQRL Service Stations LLC*, Case No. 24-bk-12150 (E.D. Ark.) (the "Involuntary Bankruptcy Case") so ruled last month.

Following a hearing on a motion seeking the same relief as this one, the Court ruled that "(i) the SQRL Leases were leases of nonresidential real property that were terminated before the July 1, 2024 petition date in this case by the expiration of their stated terms, (ii) any interest claimed by SQRL Stations in the Blue Owl Properties pursuant to the SQRL Leases is not property of the SQRL Stations estate pursuant to 11 U.S.C. § 541(b)(2), and (iii) *the filing of a bankruptcy petition by or against SQRL Stations does not operate as a stay of any act by Blue Owl or the Landlords to obtain possession of the Blue Owl Properties*, including the Eviction Actions, pursuant to 11 U.S.C. § 362(b)(10)" (the "Comfort Order").[2] The Comfort Order is attached hereto as Exhibit A. The Court also ruled, in light of Gas Hub's "procedurally deficient" attempts to sow confusion in the Involuntary Bankruptcy Case about its ownership of SQRL Stations, that Gas Hub

---

SQRUTX LP, SQLPTX LP, SQSATX LP, SQROFL001 LLC, SQTIFL001 LLC, SQMO Owner 3 LLC, SQMO Owner 2 LLC.

[2]   All emphases added unless otherwise stated.

in fact owns and controls SQRL Stations. *See* Exhibit B, August 7, 2024 Involuntary Bankruptcy Case Hearing Transcript, Case No. 4:24-bk-12150, Dkt No. 137, at 82:3-4, 97:8-15.

SQRL Stations and Gas Hub now take the position that the Comfort Order is of no effect. Indeed, Movants sought and obtained such relief in the Involuntary Bankruptcy Case precisely because SQRL Stations and Gas Hub stated their intention to file this action. As such, the Comfort Order in the Involuntary Bankruptcy Case did not simply *lift* the automatic stay, but instead ruled that because the Landlords' leases with SQRL Stations were lawfully terminated pre-petition, SQRL Stations had no estate property rights in the Blue Owl Properties, and that ***Movants' actions to retain possession of the properties formerly leased to SQRL Stations are not subject to the automatic stay***. Its ruling was ***prospective***, addressing the fact that SQRL Stations had indicated it would file this current bankruptcy petition, and on the basis of that relief, Movants have proceeded with actions around the country to retain lawful possession of their properties.

This bankruptcy is the ***fourth*** attempt by SQRL Stations and Gas Hub in the past four months to use the automatic stay as a shield for their ongoing misconduct at Movants' properties, to which neither SQRL Stations nor Gas Hub holds any legal or equitable right. Gas Hub—on behalf of SQRL Stations—is squatting at Movants' properties, pilfering rents from subtenants that are rightfully owed to Movants, wrongfully marketing Movants' properties for sale or lease, and causing physical damage to Movants' properties and the equipment thereon. This Court should not countenance SQRL Stations' and Gas Hub's attempts to use the automatic stay as cover for their ongoing unlawful possession, misuse, and marketing of Movants' properties—especially since another federal bankruptcy court of competent jurisdiction already fully addressed this exact issue last month and granted relief in Movants' favor.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

2.  Venue is proper in this court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  This Motion is brought pursuant to 11 U.S.C. ("Bankruptcy Code") §§ 105 and 362(a), (d), and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 4001(a) and 9013.

## FACTUAL BACKGROUND

**A.      The Landlords Terminated Their Leases With SQRL Stations.**

4.  Blue Owl is an investment advisory business and manages money for, among other clients, state and municipal pension plans, endowments and foundations, and other nonprofit organizations.  Blue Owl manages the investment funds that own, directly or indirectly, each of the Landlords. In turn, the Landlords own real property in more than a dozen states on which hundreds of gas stations and convenience stores sit. *See* Ex. B at 18:1-21.

5.  The Landlords own 223 sites[3] (the "Blue Owl Properties") which were formerly leased to SQRL Stations for the operation of gas stations and convenience stores pursuant to 16 lease agreements (collectively, the "SQRL Leases"). *See* Ex. B at 20:25-21:9. The first three of the SQRL Leases were entered into between SQRL Stations and the Landlords on September 14, 2023, and the final SQRL Lease was entered into between SQRL Stations and the Landlords on February 9, 2024. *See* Ex. B at 24:9-12.

6.  Each of the SQRL Leases was for an initial term of 25 years, and with the exception of details related to the premises and the identity of Landlords party to each agreement, the SQRL

---

[3]     The Blue Owl Properties are identified at Schedule I of each SQRL Lease. *See* Exs. C1-C16.

Leases were substantially identical as to all material terms. *See* Ex. B at 21:10-16. The 16 SQRL Leases are attached hereto as Exhibits C1-C16.

7.      At the time of entry into each of the SQRL Leases, SQRL Stations was wholly owned and managed by SQRL Holdings LLC ("SQRL Holdings"). On or around April 5, 2024, SQRL Holdings sold 100 percent of SQRL Stations—including its interests in the SQRL Leases and all obligations and liabilities related thereto—to Gas Hub, owned by Jamal Hizam. *See* Ex. B at 25:15-26:13.

8.      On April 1, 2024, SQRL Stations failed to pay rent due and payable to the Landlords pursuant to the SQRL Leases. *See* Ex. B at 24:17-19; 26:14-17. In accordance with the SQRL Leases, Movants issued written notices on April 10, 2024, demanding that SQRL Stations immediately pay all unpaid rent. *See* Ex. B at 26:25-28:11. Those notices are attached hereto as Exhibits D1-D4.

9.      After the expiration of the cure period outlined in the SQRL Leases, Movants sent termination notices to SQRL Stations on April 16, 2024. Pursuant to those termination notices, Movants terminated the Leases, effective immediately, accelerated all rent and other monetary sums scheduled to become due and owing under each Lease for the remainder of the applicable terms, and demanded that SQRL Stations immediately surrender the properties to the Landlords. *See* Ex. B at 28:20-30:14. Those notices are attached hereto as Exhibits E1-E4. The demand notices and termination notices each comported with the requirements of the SQRL Leases. *See* Ex. B at 80:6-8 ("THE COURT: […] The uncontroverted evidence is that the leases were terminated prepetition for failure to pay rent.").

10.     Despite the termination notices, Gas Hub, on behalf of SQRL Stations, refused to surrender the properties. On April 23, 2024, Blue Owl received correspondence from counsel for

Gas Hub and Hizam informing them that "SQRL Service Stations has no intention to voluntarily vacate the leased premises, or to voluntarily terminate the lease(s) or abandon the leased premises." *See* Ex. B at 30:15-32:6. This correspondence from counsel for Gas Hub is attached hereto as Exhibits F1-F4.

11. As Gas Hub refused to surrender the Blue Owl Properties, it also launched a campaign of misconduct to harm Movants' business. Blue Owl has learned that Hizam and Gas Hub, on behalf of SQRL Stations, have (i) actively marketed the Blue Owl Properties, in which they have no legal right, to third parties for sale or lease following the termination of the leases, and (ii) entered and occupied vacant Blue Owl Properties to perform construction work, remove equipment, and change locks. *See* Ex. B at 32:10-33:5. These actions have interfered with Blue Owl's business by preventing Blue Owl from re-leasing properties formerly leased to SQRL Stations and creating significant confusion in the marketplace as to the rightful owners and occupants of the Blue Owl Properties. *See* Ex. B at 33:14-34:22.

12. To halt this misconduct by SQRL Stations and retain lawful possession of their properties, Movants initiated multiple legal actions against SQRL Stations. Specifically, Movants initiated eviction proceedings to enforce the termination notices at certain of the Blue Owl Properties around the country and retain possession of those properties (the "Eviction Actions").[4] *See* Ex. B at 38:8-40:19. The Eviction Actions do not seek any monetary relief. To date, Movants

---

[4] To protect their business from suffering irreparable harm, Movants also filed a complaint against SQRL Stations in the Circuit Court of Cook County, Illinois, Case No. 2024CH04544 (the "Cook County Action"). The Cook County action seeks: (i) declaratory relief that SQRL Stations breached each SQRL Lease and has no right to remain on the Blue Owl Properties; (ii) injunctive relief to prevent SQRL from engaging in further misconduct related to the Blue Owl Properties; (iii) damages for SQRL Stations' breach of contract for failure to pay rent and failure to vacate and surrender the properties; (iv) damages for SQRL Stations' breach of contract for misuse of a tenant improvement allowance advanced by the Landlords under the SQRL Leases; (v) damages for the publication of false and defamatory statements online regarding Blue Owl and its employees believed to have been disseminated by SQRL Stations. *See* Ex. B at 42:3-18. The Cook County Action is not at issue in this Motion, but Movants reserve all rights with respect to the Cook County Action.

have initiated Eviction Actions in Alabama, Florida, Indiana, Louisiana, Mississippi, Missouri, New York, Ohio, Oklahoma, Pennsylvania, and Texas, and have received court orders granting possession of Blue Owl Properties in Ohio, Oklahoma, and Texas. Exemplar judgments granting Movants' possession of properties from courts in Ohio, Oklahoma, and Texas are attached hereto as Exhibits G1-G3. Courts that have ruled on the Eviction Actions have uniformly held that the Landlords' termination notices were valid, and that SQRL Stations has no claim to the properties.

> **B.     SQRL Stations and Gas Hub Have Attempted to Abuse the Bankruptcy Process to Prevent Landlords From Retaining Possession of the Blue Owl Properties.**

13.     For more than four months, Gas Hub—acting on behalf of Debtor SQRL Stations— and Hizam have refused to comply with the termination notices of the SQRL Leases and have sought to frustrate Movants' efforts to retain possession of the Blue Owl Properties. Counsel for Gas Hub—also purporting to act on behalf of SQRL Stations—has expressly sought to leverage the automatic stay provided by repeated bankruptcy filings by or against SQRL Stations to halt the progress of Movants' Eviction Actions. Meanwhile, Gas Hub and Hizam have used these serial filings as cover to continue their misconduct at the Blue Owl Properties. As a result, SQRL Stations—through Gas Hub and Hizam—has continued its unlawful squatting at the Blue Owl Properties, and Blue Owl further understands that SQRL Stations—through Gas Hub and Hizam— continues to ***collect rent from subtenants*** at certain of the Blue Owl Properties without making any payments to the Landlords. *See* Ex. B at 32:10-34:22, 43:2-12.

14.     Indeed, the instant action is just Gas Hub's latest effort to subject the Eviction Actions to a bankruptcy stay that would prevent Movants from reclaiming their properties. ***First***, on May 13, 2024, Gas Hub filed an involuntary petition against SQRL Holdings, *In re: SQRL Holdings LLC*, Case No. 4:24-bk-11566 (E.D. Ark.) (the "Holdings Bankruptcy"). Counsel for Gas Hub then contacted Movants' counsel on behalf of SQRL Stations following the filing of

7

certain Eviction Actions to assert that their client intended to remain in possession of the Blue Owl

Properties, and that those actions were subject to the automatic stay in the Holdings Bankruptcy,

even though SQRL Stations was not a debtor in that action.

15.     *Second*, after that effort failed, Gas Hub filed a procedurally improper and factually

baseless motion to add SQRL Stations into the Holdings Bankruptcy by asserting that Gas Hub

never purchased SQRL Stations. *See* Case No. 4:24-bk-11566, Dkt. No. 32. That motion was

withdrawn after Gas Hub was admonished by the bankruptcy court. *See* Case No. 4:24-bk-11566,

Dkt. No. 144; Ex. B at 99:4-13.[5]

16.     *Third*, on July 1, 2024, Gas Hub filed another involuntary bankruptcy action against

SQRL Stations, *In re SQRL Service Stations LLC*, Case No. 4:24-bk-12150 (E.D. Ark.) (the

"Involuntary Bankruptcy Case"). The Involuntary Bankruptcy Case was again premised on

baseless assertions that Gas Hub never purchased SQRL Stations but was actually a creditor of

SQRL Stations. *See* Ex. B at 82:3-4.

17.     Shortly after filing the Involuntary Bankruptcy Case, Gas Hub reversed course

*again* and acknowledged that it purchased and owns SQRL Stations, and that it intended to file a

*Chapter 11 petition on behalf of SQRL Stations*. *See* Exhibit H, "SQRL expected to switch course

on bankruptcy filing," July 22, 2024.

18.     As it forced Blue Owl and other creditors to play procedural whack-a-mole in

bankruptcy court, Gas Hub consistently asserted that the Eviction Actions are subject to the

---

[5]   "THE COURT: […] I will say that, Mr. Scheinberg, I have appreciated your candor in this court when you don't
know something or when you have been confused, but I am also aware that when I say that this has been unusual,
it has been because of pleadings that have been filed to request relief, such as adding 36 debtors to a petition, for
which I requested, for instance, a legal path, and you gave me none. So, that increases the cost of everyone. If
that case should be re-filed in front of this Court, I want to see a lead counsel for Gas Hub that is not you. Okay?"

automatic stay. *See* Ex. B at 81:16-21.[6] Indeed, while Movants attempted to obtain relief in the Involuntary Bankruptcy Case to protect their properties and put a stop to SQRL Stations' and Gas Hub's unlawful possession, misuse, and marketing of the Blue Owl Properties, Gas Hub's counsel declared to the press that SQRL Stations, through Gas Hub, intended to use its bankruptcy filings to "make deals with the landlords either to purchase some of these stores or to operate the stores under a new lease agreement." *See* Ex. H. In other words, Gas Hub and SQRL Stations were abusing the bankruptcy process in a baseless attempt to retain their grip on the Blue Owl Properties, in which they have no legal or equitable interest.

### C.   The Court in the Involuntary Bankruptcy Case Held that the Eviction Actions are not Subject to the Automatic Stay by Any SQRL Stations Bankruptcy.

19.   Although Movants maintained that the automatic stay should not apply to their Eviction Actions, out of caution and deference to the bankruptcy process, Movants paused those actions following the filing of the Involuntary Bankruptcy Case and sought relief from the bankruptcy court. *See* Ex. B at 40:1-19. To halt Gas Hub's gambit and allow the Evictions Actions to proceed, Movants filed their *Emergency Motion Confirming Absence of the Automatic Stay, Alternatively, for Relief from Stay, and Request for Expedited Hearing* (the "Comfort Motion") in the Involuntary Bankruptcy Case, on July 8, 2024. *See* Case No. 4:24-bk-12150, Dkt. No. 22. A copy of Movants' Comfort Motion is attached hereto as Exhibit I.[7]

---

[6]   "THE COURT: […] I've been surprised with many pleadings that Gas Hub has filed in this case and in a related case, SQRL Holdings, sometimes in form, but more often in substance, and I simply cannot predict what will happen. So I can't rely on any of that to say that this stay needs to stay in place so that Gas Hub can pursue this other plan."

[7]   On July 25, 2024, Respondents also filed their *Second Motion for Relief from Automatic Stay and Request for Expedited Hearing* (the "Lift Stay Motion"), which addressed the applicability of the stay to the Cook County Action.

20.     On August 7, 2024, the Court held a hearing on the Comfort Motion. Counsel for Gas Hub appeared and opposed the Comfort Motion, and the Court granted the Comfort Motion over Gas Hub's objection.[8] At the evidentiary hearing, the Court ruled that there was "uncontroverted evidence…that the [SQRL] leases were terminated prepetition for failure to pay rent" and that the SQRL Stations bankruptcy estate "does not have an interest in the leases because they were terminated prepetition." *See* Ex. B at 80:6-15. The Court also determined conclusively that Gas Hub owns and controls SQRL Stations. *See* Ex. B at 78:13-16, 82:3-4.[9]

21.     Following the hearing, the Court in the Involuntary Bankruptcy Case entered the Comfort Order. *See* Ex. A, Case No. 4:24-bk-12150, Dkt No. 129. The Comfort Order provided that "(i) the SQRL Leases were leases of nonresidential real property that were terminated before the July 1, 2024 petition date in this case by the expiration of their stated terms, (ii) any interest claimed by SQRL Stations in the Blue Owl Properties pursuant to the SQRL Leases is not property of the SQRL Stations estate pursuant to 11 U.S.C. § 541(b)(2), and (iii) ***the filing of a bankruptcy petition by or against SQRL Stations does not operate as a stay of any act by Blue Owl or the Landlords to obtain possession of the Blue Owl Properties, including the Eviction Actions***, pursuant to 11 U.S.C. § 362(b)(10)." Such prospective relief in the Comfort Order was necessary in light of SQRL Stations' and Gas Hub's representations that SQRL Stations intended to re-file

---

[8]     The Court also granted the Lift Stay Motion. *See* Case No. 4:24-bk-12150, Dkt No. 128.

[9]     Counsel for Gas Hub also asserted at the hearing that the SQRL Leases were "fraudulent." The Court indicated that, even if "the leases were fraudulent somehow and void," the SQRL Stations bankruptcy estate would not "somehow acquire an interest under the leases that would be helpful in a Chapter 11 reorganization case." *See* Ex. B at 80:15-81:4.

for Chapter 11 bankruptcy. *See* Ex. B at 91:4-6.[10] Subsequently, the Court entered an order dismissing the Involuntary Bankruptcy Case. *See* Case No. 4:24-bk-12150, Dkt No. 139.

22.     SQRL Stations filed this action on August 16, 2024—one week after the entrance of the Comfort Order in the Involuntary Bankruptcy Case and more than one month after the petition date referenced therein. Based on the clear language of the Comfort Order that the SQRL Leases were terminated prior to July 1, 2024, and that no bankruptcy petition filed by or against SQRL Stations would operate to stay the Eviction Actions, Movants resumed the Eviction Actions following its issuance and are in process of retaining possession to the Blue Owl Properties formerly leased to SQRL Stations. But despite that clear language, SQRL Stations and Gas Hub now assert that the Comfort Order has no effect.

23.     On August 29, 2024, after Movants issued statutory notices to vacate regarding certain Blue Owl Properties in Texas and Florida, counsel for Gas Hub contacted counsel for Blue Owl and baselessly asserted that the instant action precluded Movants from directing notices to vacate to SQRL Stations. In response, counsel for Blue Owl directed counsel for Gas Hub to the language of the Comfort Order. But on September 3, 2024, counsel for Blue Owl received a letter from counsel for SQRL Stations purporting to serve as formal notice that the "Notice to Vacate the leased premises, demand for turnover of same, and threat of legal action against our Client are all violations of the automatic stay pursuant to 11 U.S.C. § 362(a)(1)." A copy of the letter from SQRL Stations' counsel is attached hereto as Exhibit J. Counsel for Blue Owl again directed counsel for SQRL Stations to the language of the Comfort Order, and requested confirmation that SQRL Stations did not intend to relitigate the issues already resolved by that order. A copy of the

---

[10]    "MR. SCHEINBERG: […] My client [SQRL Stations] has not had the chance to file their own case, which is what we want to do at this point, is to file our own case, be it here or be it in Texas or Florida."

11

correspondence between Blue Owl's counsel and SQRL Stations' counsel is attached hereto as Exhibit K. Counsel for Gas Hub and SQRL Stations never responded to this correspondence.

24. SQRL Stations and Gas Hub have thus made clear that they intend to continue their abuse of the bankruptcy process through this action and seek to leverage the automatic stay *yet again* to prevent Movants from lawfully protecting their business and properties. Thus, Movants have, in deference to the Court, paused their Eviction Actions again, and file this Motion to confirm that the Comfort Order remains in force and the automatic stay does not apply to the Eviction Actions.

## RELIEF REQUESTED

25. By this Motion, Movants seek an order from this Court confirming that the Comfort Order remains in effect and that, pursuant to the Comfort Order, the SQRL Leases were properly terminated pre-petition, any interest claimed by SQRL Stations in the Blue Owl Properties pursuant to the terminated SQRL Leases is not property of SQRL Stations' bankruptcy estate, and Movants' Eviction Actions are not subject to the automatic stay.

### A. The Comfort Order Issued in the Involuntary Bankruptcy Case Has Preclusive Effect in This Proceeding.

26. The order of a bankruptcy court is entitled to the preclusive effects of res judicata and collateral estoppel. *See Southmark Prop. v. Charles House Corp.*, 742 F.2d 862, 869-70 (5th Cir. 1984); *In re Reddy Ice Holdings, Inc.*, 611 B.R. 802, 808 (Bankr. N.D. Tex. 2020). The doctrine of collateral estoppel, or issue preclusion, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *In re Hensley*, 551 B.R. 792, 799 (E.D. Tex. 2015) (internal citations omitted). Collateral estoppel will apply to preclude relitigation of an issue if a party can show "(1) that the issue at stake be identical to the one involved in the prior litigation;

12

(2) that the issue has been actually litigated in the prior litigation; and (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action." *In re Reddy Ice Holdings*, 611 B.R. at 809-10 (quoting *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009)).

27.     The doctrine of collateral estoppel applies to the Comfort Order entered in the Involuntary Bankruptcy Case and precludes any argument that the Eviction Actions remain subject to the automatic stay. Following an evidentiary hearing addressing Movants' Comfort Motion— at which counsel for Gas Hub appeared and argued that the automatic stay should remain in effect—the Court in the Involuntary Bankruptcy Case determined that there was "uncontroverted evidence…that the [SQRL] leases were terminated prepetition"—prior to the July 1, 2024, petition date in that case—pursuant to § 362(b)(10) and that the SQRL Stations bankruptcy estate "does not have an interest in the leases because they were terminated prepetition" pursuant to § 541(b)(2). *See* Ex. B at 80:6-15. Accordingly, the Comfort Order provided that "(i) the SQRL Leases were leases of nonresidential real property that were terminated before the July 1, 2024 petition date in this case by the expiration of their stated terms, (ii) any interest claimed by SQRL Stations in the Blue Owl Properties pursuant to the SQRL Leases is not property of the SQRL Stations estate pursuant to 11 U.S.C. § 541(b)(2), and (iii) the filing of a bankruptcy petition by or against SQRL Stations does not operate as a stay of any act by Blue Owl or the Landlords to obtain possession of the Blue Owl Properties, including the Eviction Actions, pursuant to 11 U.S.C. § 362(b)(10)." *See* Ex. A. The Court's ruling that the SQRL Leases were terminated before the July 1, 2024 petition date in the Involuntary Bankruptcy Case conclusively determines that the SQRL Leases were terminated before the August 16, 2024 petition date in this action and are thus not part of the Debtor's estate.

28.     Further, the Comfort Order reflects the resolution of an issue litigated between the same parties to this Motion. Counsel for Gas Hub has purported to act on behalf of SQRL Stations since SQRL Stations purchased Gas Hub in April—indeed, the Court explicitly found "that Gas Hub owns SQRL," *See* Ex. B at 82:3-4—and represented on the record SQRL Stations and Gas Hub shared an identity as "my client," which intended to file this instant action following dismissal of the Involuntary Bankruptcy Case. *See* Ex. B at 85:7-12, 91:4-6.[11] Accordingly, the Comfort Order was prospective in nature and contemplated that the automatic stay would not apply to the Eviction Actions notwithstanding "the filing of a bankruptcy petition *by or against SQRL Stations*." *See* Ex. A. Thus, collateral estoppel of the Comfort Order applies in equal force to both SQRL Stations and Gas Hub. [12]

29.     Any assertion that the Eviction Actions are subject to the automatic stay is thus barred by collateral estoppel. Indeed, "the issue at stake"—the prepetition termination of the SQRL Leases and inapplicability of the automatic stay to the Eviction Actions—is identical to the one resolved by the Comfort Order, those issues "actually litigated" in an evidentiary hearing in the Involuntary Bankruptcy Case, and the determination of those issues—namely that the SQRL Leases were terminated prior to the filing of any bankruptcy petition and thus not part of SQRL

---

[11]   "MR. SCHEINBERG: […] And *my client* does want to at least attempt to do a Chapter 11 to see if they can salvage what they've paid three million dollars for so far, and if not, it would, I guess, be converted to a 7, and then a Trustee could liquidate whatever there is, if there is anything […] *My client* has not had the chance to file their own case, which is what we want to do at this point, is to file our own case, be it here or be it in Texas or Florida."

[12]   Any argument to the contrary is baseless and ignores months of representations by counsel for Gas Hub—to counsel for Movants, to the press, and to multiple courts—that it represents SQRL Stations. But even should this Court now draw a distinction between Gas Hub and SQRL Stations, SQRL Stations was noticed of the hearing on the Comfort Motion in the Involuntary Bankruptcy Case, and counsel acting for SQRL Stations in this matter was engaged but did not appear at that hearing. *See* Ex. B at 9:15-20 ("MR. SCHEINBERG: And we've also agreed that should this case be dismissed, and a fresh case be filed on behalf of SQRL Service Stations, we agree that the contents of their orders would apply to that case. And I've reached out to the attorney, Ms. Lindauer, who will be representing SQRL Service Stations, to agree that that will be the agreement.).

14

Stations' bankruptcy estate—was a "critical and necessary part of the judgment" that resulted in the Comfort Order. *See In re Reddy Ice Holdings*, 611 B.R. at 809-10.

**B.      In the Alternative, the Automatic Stay Does Not Apply to the Eviction Actions Because the SQRL Leases Were Terminated Prepetition.**

30.      This Court need not reach the merits of this Motion because the Comfort Order from the Involuntary Bankruptcy Case is subject to collateral estoppel and precludes any argument by SQRL Stations or Gas Hub that the automatic stay applies to the Eviction Actions. However, should the Court disagree that collateral estoppel applies, Movants request that this Court issue its own order identical to the Comfort Order on the merits of the issue.

31.      Pursuant to Section 105 of the Bankruptcy Code, this Court has the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a).

32.      Under the Bankruptcy Code and relevant law, the automatic stay does not affect the Eviction Actions, which relate to non-residential real estate leases that terminated before any petition was filed.

33.      "Property of the estate" is defined in Section 541 of the Bankruptcy Code to explicitly exclude non-residential leases that terminated pre-petition.  Section 541(b)(2) states that "Property of the estate does not include . . . any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title."  11 U.S.C. §541(b)(2).

34.      The automatic stay is established in Section 362 of the Bankruptcy Code, and similarly carves out non-residential leases that terminated pre-petition.  Section 362(b)(10) states "The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated

15

by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property." 11 U.S.C. §362(b)(10).

35.     The SQRL Leases each relate to non-residential real estate, upon which SQRL Stations operated gas stations and convenience stores.

36.     Each of the SQRL Leases was validly terminated on April 16, 2024.

37.     Where a lease is terminated by operation of a valid termination provision, it is deemed "terminated by the expiration of the stated term of the lease" under Section 362(b)(10). *See In re Foote*, 277 B.R. 393, 397 (Bankr. E.D. Ark. 2002) (a sublease that was terminated for non-payment prior to a bankruptcy filing was not property of the estate or subject to the automatic stay because "where a default gives one party an option to terminate the lease, the termination occurs one minute before midnight on the date the other party receives notice that the option has been exercised."); *see also In re Portofindough LLC*, 655 B.R. 694, 700 (Bankr. S.D.N.Y. 2023) (finding eviction actions were not subject to the automatic stay because "the Lease terminated without further action necessary by the Landlord after the Landlord served the Debtor with (a) the fifteen (15) day notice of default and (b) the five (5) day notice of termination of Lease."); *In re Pol'y Realty Corp.*, 242 B.R. 121, 128 (S.D.N.Y. 1999), aff'd, 213 F.3d 626 (2d Cir. 2000) ("Although the Bankruptcy Code does not define the terms 'terminated' and 'stated term,' the phrase 'stated term'—which is not limited in any way—and the legislative history of § 362 support the conclusion that [landlord's] accelerated termination pursuant to Article 21 of the Net Lease is covered by §§ 541(b)(2) and 362(b)(10).")

38.     Likewise, "a leasehold interest that has been terminated prior to an order for relief may not be assumed or rejected by the debtor under 11 U.S.C. § 365(c)(3). 'If the contract or lease has expired by its own terms or has been terminated prior to the commencement of the bankruptcy

16

case, then there is nothing left for the [debtor] to assume or [reject].'" *In re Foote*, 277 B.R. at 396

(citing *In re Huffman*, 171 B.R. 649, 653 (Bankr. W.D. Mo. 1994)).

39.     Because the SQRL Leases were for non-residential property and were terminated

prior to the filing of this action, SQRL Stations has no interest in the SQRL Leases or the Blue

Owl Properties that could constitute property of the estate, and the automatic stay does not apply

to the Eviction Actions.

**C.     SQRL Stations' and Gas Hub's Successive Bankruptcy Filings Indicate Abuse of the Bankruptcy Process to Which the Stay Should Not Apply.**

40.     Gas Hub—on behalf of SQRL Stations—is currently occupying the Blue Owl

Properties without any legal right to do so and is marketing Blue Owl Properties to third parties

for sale or lease.  This ongoing conduct is causing irreparable harm including damage to the Blue

Owl Properties, interference with Movants' use of their property, and reputational harm and

marketplace confusion regarding Movants' ownership of the Blue Owl Properties.

41.     The instant action is Gas Hub's *fourth* attempt in as many months to place SQRL

Stations into bankruptcy to avail itself of the automatic stay and provide cover for its ongoing

misconduct at the Blue Owl Properties. This manipulation of the bankruptcy process is wrong and

has frustrated the ability of Movants and other creditors to protect their property. Although the

Comfort Order plainly indicates that any bankruptcy petition filed by or against SQRL Stations

does not operate as an automatic stay to the Eviction Actions—and SQRL Stations and Gas Hub

raise no substantive argument to the contrary—SQRL Stations and Gas Hub now seek to use the

bankruptcy stay as cover for their misconduct yet again.

42.     SQRL Stations' and Gas Hub's abuse of the bankruptcy process through successive

filings in an effort to manipulate the automatic stay is improper, and other bankruptcy courts have

recognized that such abuse should not be rewarded with the benefit of the automatic stay. *See, e.g.,*

*In re Martin*, 97 B.R. 1013, 1017 (Bankr. N.D. Ga. 1989) (finding debtor's filing of Chapter 7 petition "abusive and invalid" where stay had already been lifted in pending Chapter 13 proceeding to allow creditor to proceed in state court foreclosure action, and annulling automatic stay *ab initio*); *see also In re Turner*, 207 B.R. 373, 379 (B.A.P. 2d Cir. 1997), as amended (Mar. 4, 1997) ("The existence of multiple cases may indicate an exploitation of the bankruptcy process and an attempt at reimposing the automatic stay after it had been previously lifted."); *Weiszhaar Farms, Inc. v. Livestock State Bank*, 113 B.R. 1017, 1020 (D.S.D. 1990) ("manipulating the judicial process by reimposing the automatic stay through multiple filings works an unconscionable fraud on creditors").

### WAIVER OF STAY UNDER BANKRUPTCY RULE 4001(a)(3)

43. Movants will suffer irreparable harm if they are unable to proceed with the Eviction Actions and respectfully request that if the relief sought herein is granted that the 14-day stay imposed by Bankruptcy Rule 4001(a)(3) be waived. Movants respectfully request that any order of this court confirming absence of the automatic stay be effective immediately upon entry.

### CONCLUSION

**WHEREFORE**, Movants respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit L, (i) confirming that the SQRL Leases were properly terminated pre-petition, (ii) confirming that any interest claimed by SQRL Stations in the Blue Owl Properties pursuant to the terminated SQRL Leases is not property of SQRL Stations' bankruptcy estate, (iii) confirming that the filing of the instant action or any bankruptcy petition by or against SQRL Stations does not operate as a stay of any action by Movants to obtain possession of the Blue Owl Properties, and (iv) granting such other and further relief as is just and warranted.

18

Dated: September 6, 2024

Respectfully submitted,

/s/ John J. Kane

Joseph M. Coleman (Tex. Bar No. 04566100)
John J. Kane (Tex. Bar No. 24066794)
JaKayla J. DaBera (Tex. Bar No. 24129114)
**KANE RUSSELL COLEMAN LOGAN PC**
901 Main Street, Suite 5200
Dallas, Texas 75202
Tel.: (214) 777-4200
Fax: (214) 777-4299
Email: jcoleman@krcl.com
Email: jkane@krcl.com
Email: jdabera@krcl.com

-and-

**KIRKLAND & ELLIS LLP**
Benjamin T. Kurtz (*pro hac vice* forthcoming)
Kent J. Hayden (*pro hac vice* forthcoming)
Evan Ribot (*pro hac vice* forthcoming)
333 W Wolf Point Plaza
Chicago, Illinois 60654
Tel.: (312) 862-2000
Fax: (312) 862-2200
Email: benjamin.kurtz@kirkland.com
Email: kent.hayden@kirkland.com
Email: evan.ribot@kirkland.com

*Counsel for Blue Owl Real Estate Capital LLC*

## CERTIFICATE OF CONFERENCE

On Friday, September 6, 2024, undersigned counsel contacted Debtors' counsel, Ms. Lindauer, and inquired whether she opposed an emergency setting on this Motion on September 12, 2024 at 1:30. Ms. Lindauer will be present before the Court on a similar matter in the same case at that time, and the Court has no other matters on its docket that afternoon. Ms. Lindauer indicated that she opposes the motion and setting, noting that she "already [has] too many things set next week." Blue Owl requests that the Court hear its Motion at that time despite Ms. Lindauer's opposition given the pre-existing Comfort Order.

/s/ John J. Kane

John J. Kane

19

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on September 6, 2024, a true and correct of the foregoing Motion was filed with the Court and served via the Court's electronic case filing system (ECF) upon all parties receiving such service in this Bankruptcy Case.

*/s/ John J. Kane*

John J. Kane
